# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**OSCAR ALEXIS GONZALEZ AGUILAR,**

**Petitioner,[1]**

**v.**                                                              **No. 19-cv-0412 WJ/SMV**

**KEVIN McALEENAN,[2] MATTHEW T. ALBENCE,
WILLIAM P. BARR, JOSE M. CORREA,[3]
DEAN KING, and CHAD MILLER,**

**Respondents.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION TO DENY PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS

THIS MATTER is before me on Petitioner's Petition for a Writ of Habeas Corpus [Doc. 1],

filed on May 3, 2019.  Respondents responded on June 22, 2019.  [Doc. 24].  Petitioner replied on

July 8, 2019.  [Doc. 26].  The Honorable William P. Johnson, Chief United States District Judge,

referred this matter to me for analysis and a recommended disposition.  [Doc. 3].  I have considered

the briefing, the relevant portions of the record, and the relevant law.  Being otherwise fully

advised in the premises, I recommend that the Petition be DENIED.

---

[1] Petitioner identifies as female and uses the first name Kelly and female pronouns.  [Doc. 1] at 2 n.1.  Accordingly, I will refer to Petitioner as "she" or "her."

[2] Kevin McAleenan resigned as the Acting Secretary of Homeland Security on October 11, 2019.  Jake Tapper, *Kevin McAleenan Resigns as Acting Homeland Security Director*, CNN Politics (October 11, 2019, 8:17 PM), https://www.cnn.com/2019/10/11/politics/mcaleenan-resigns-homeland-security-secretary/index.html.  The President has not yet appointed a new Acting Secretary.  *See* Zolan Kanno-Youngs & Maggie Haberman, *Trump Running out of Options for Homeland Security Secretary*, N.Y. Times (October 21, 2019), https://www.nytimes.com/2019/10/21/us/politics/trump-homeland-security-secretary.html.  Therefore, McAleenan remains a party in this action until his successor is appointed.  *See* Fed. R. Civ. P. 25(d).

[3] Petitioner originally named Floyd Sam Farmer as a Defendant in this case.  Jose M. Correa is Farmer's successor as Acting Field Office Director at the El Paso Field Office of U.S. Immigration and Customs Enforcement.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Jose M. Correa should be substituted for Farmer as a Defendant in this suit.  *See* Fed. R. Civ. P. 25(d).

# I.    BACKGROUND

Petitioner is a 22-year-old transgender woman from Honduras.  [Doc. 1] at 2, 5–6.  She fled Honduras at age 12 after suffering abuse due to her gender identity.  *Id.* at 5–6.  She travelled to Mexico where she "[was] held captive in a Mexican bar, [and] forced to engage in sex work . . . for about five years."  *Id.* at 6.  When she was 17, Petitioner presented herself to immigration officials at the U.S.-Mexico border and requested asylum.  *Id.*  She had no valid entry documents.  [Doc. 24-1] at 2.  She was detained and sent to the San Diego Juvenile Coordinator.  *Id.*  On July 9, 2014, Petitioner was released from custody on an Order of Release on Recognizance.[4]  [Doc. 24-1] at 2.  In August of 2017, Petitioner was arrested in Louisiana and charged with prostitution and crimes against nature.[5]  *Id.*  Louisiana authorities transferred her to Immigration and Customs Enforcement ("ICE") custody.  *Id.* at 3.  ICE revoked her Order of Release on Recognizance and detained her under 8 U.S.C. § 1225(b)(2)(A) as an alien seeking admission into the United States.  *Id.*

Petitioner has remained in custody since 2017.  She is detained at the Cibola County Correctional Center in Milan, New Mexico.  *Id.*  The Department of Homeland Security ("DHS")[6] has repeatedly denied her requests for parole or to be released on her own recognizance.  [Doc. 1] at 8–9.  In May of 2018 an immigration judge denied her asylum claim and ordered her removed

---

[4] "To be released on your own recognizance means that you are released on your promise that you will appear at the scheduled [immigration] hearing."  *Review of INS Policy on Releasing Illegal Aliens Pending Deportation*, 107th Cong. 2 (2002) (statement of Sen. Carl Levin, Chairman, S. Subcomm. on Investigations).  Those who are released on their own recognizance "are allowed to move at will in this country with no constraints, other than a written instruction to appear at a hearing."  *Id.*

[5] These charges remained pending against her as of May 3, 2019, when she filed her Petition.  [Doc. 1] at 7.

[6] ICE is an agency within the Department of Homeland Security.  *See* U.S. Immigration and Customs Enforcement, https://www.ice.gov/ (last visited November 5, 2019).

from the United States to Honduras. [Doc. 24-1] at 3. She appealed that decision. The Board of Immigration Appeals dismissed her appeal and affirmed her order of removal. *Id.* Petitioner appealed that decision to the United States Court of Appeals for the Tenth Circuit and filed an emergency motion to stay her removal pending judicial review. *See Gonzalez Aguilar v. Barr*, No. 18-9570 (10th Cir. filed Nov. 18, 2018).

The Tenth Circuit granted Petitioner's motion to stay her removal, finding that she had "made a strong showing that [s]he is likely to succeed on the merits." *Gonzalez Aguilar*, No. 18-9570 [Doc. 010110098599] at 1 (10th Cir. Dec. 17, 2018) (alteration in original) (quoting *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir. 2013)). Her removal is stayed pending the Tenth Circuit's decision on her appeal. *Id.*

Petitioner filed the instant Petition for a Writ of Habeas Corpus on May 3, 2019. [Doc. 1]. She brings her Petition under 28 U.S.C. § 2241. *Id.* at 2. She argues that her continued detention violates the Due Process Clause of the Fifth Amendment. *Id.*

## II.     LEGAL STANDARD

A habeas petition under 28 U.S.C. § 2241 "challenges 'the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement.'" *Leatherwood v. Allbaugh*, 861 F.3d 1034, 1041 (10th Cir. 2017) (quoting *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997)). "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that [she] is entitled to relief." *Sa'Ra v. Raemisch*, 536 F. App'x 783, 788 (10th Cir. 2013) (quoting *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (per curiam)).

### III. ANALYSIS

Petitioner asserts that the Court should order Respondents to release her from DHS custody because her prolonged and potentially indefinite detention violates the Fifth Amendment Due Process Clause. [Doc. 1] at 2. Alternatively, Petitioner requests that the Court order Respondents to release her within 30 days unless Respondents schedule a bond hearing before an immigration judge and establish that she presents a flight risk or danger to the community. *Id.*

Respondents raise a number of arguments against the Petition. First, they argue that because Petitioner is an arriving alien who has not yet been admitted to the United States, she has no statutory or Fifth Amendment right to a bond hearing or immediate release. [Doc. 24] at 4–7. Second, they contend that even if the Fifth Amendment protects her from indefinite detention, that right is not implicated because her detention will not continue indefinitely. *Id.* at 7–9. Third, Respondents argue that Congress has plenary power of immigration regulation, and Petitioner has received all the process that Congress has provided her. *Id.* at 7–8. Fourth, Respondents argue that if the Court were inclined to require a bond hearing, the government should not bear the burden of proving that Petitioner is a flight risk or a danger to the community. *Id.* at 10–12. Finally, Respondents contend that only Warden Chad Miller—the person with custody of Petitioner—is a proper Respondent. *Id.* at 12.

Because I recommend finding that Respondents prevail on their first argument, I will not reach the remaining arguments.

### A. The Statutory Structure Applicable to Petitioner

The Immigration and Nationality Act ("INA"), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), provides the framework for the

detention of aliens in or attempting to enter the United States.  Before passage of IIRIRA, the INA referred to aliens ineligible for entry into the United States as "excludable" aliens.  *Chi Thon Ngo v. INS*, 192 F.3d 390, 295 n.4 (3d Cir. 1999); *see also* 8 U.S.C. § 1182(a) (1994).  IIRIRA changed this statutory structure.  The statute now refers to "inadmissible" aliens, rather than excludable aliens.  8 U.S.C. § 1182(a) (2018).  An inadmissible alien is one who has not legally entered the United States.  *See id.* § 1101(a)(13)(A).  "'Inadmissible' aliens, therefore, include aliens who have not entered the United States . . . and those who entered illegally . . . ." *Rosales-Garcia v. Holland*, 322 F.3d 386, 391 n.1 (6th Cir. 2003).

U.S. immigration law authorizes the government to detain aliens seeking admission into the country.  *See* § 1225(b).  These aliens are also known as "arriving alien[s]," *see* 8 C.F.R. § 1.2 (2019), and may be detained under one of two subsections of § 1225(b).  Section 1225(b)(1) "applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation.  [It] also applies to certain other aliens designated by the Attorney General in his discretion." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (citation omitted). "Section 1225(b)(2) is broader.  It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," subject to certain exceptions.  *Id.*  Aliens detained under § 1225(b)(2) "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* (alterations in original) (quoting § 1225(b)(2)(A)).

Under certain circumstances, IIRIRA also permits detained arriving aliens to be allowed within U.S. borders.  *See, e.g.*, § 1182(d)(5)(A) (allowing the Attorney General to temporarily parole an inadmissible alien into the United States for "urgent humanitarian reasons or significant

public benefit").  Yet, "[a]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1440 (5th Cir. 1993).  Courts commonly refer to this situation as the entry fiction, *see id.*, and it "runs throughout immigration law," *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

In this case, the DHS is currently detaining Petitioner under § 1225(b)(2)(A) after her arrest in the United States for prostitution.  [Doc. 24-1] at 3.  Though she requests to be released, the text of § 1225(b)(2) mandates her continued detention.  § 1225(b)(2)(A) ("[T]he alien *shall* be detained . . . ." (emphasis added)); *Jennings*, 138 S. Ct. at 845.  Neither does the text of § 1225(b) require a bond hearing.  *Jennings*, 138 S. Ct. at 842–46.  Plaintiff does not argue that any other statute authorizes her release.  Petitioner's case therefore turns on whether the Fifth Amendment permits her continued detention under § 1225(b)(2)(A).

**B.      The Applicability of the Fifth Amendment Due Process Clause to Aliens**

The Constitution does not apply equally to citizens and aliens within U.S. borders.  Rather, an alien has traditionally "been accorded a generous and ascending scale of rights as [s]he increases [her] identity with our society."  *Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950).  The Fifth Amendment provides that no "person" shall be "deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  An alien is undoubtedly a "person" and enjoys at least some due-process rights.  *See Zadvydas*, 533 U.S. at 690.  Nonetheless, "[t]he fact that aliens within the territorial jurisdiction of the United States are protected by the Due Process Clause . . . does not lead to the conclusion that all aliens are entitled to the same rights as citizens or to the

conclusion that all aliens must be treated alike." *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1167 (D.N.M. 2014), *vacated as moot*, No. 14-cv-0769 JCH/CG, 2015 WL 7454248 (D.N.M. Sept. 23, 2015). Indeed, the Supreme Court "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003).

The scope of an alien's constitutional rights often depends on her immigration status. Arriving aliens do not enjoy the same panoply of constitutional rights as non-arriving aliens[7] or U.S. citizens. Although the Fifth Amendment Due Process Clause protects aliens from certain substantive and procedural abuses, "the nature of that protection may vary depending on [immigration] status and circumstance." *Zadvydas*, 533 U.S. at 694.

> The Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores. But once an alien lawfully enters and resides in this country [s]he becomes invested with the rights guaranteed by the Constitution to all people within our borders. Such rights include those protected by the First and Fifth Amendments . . . .

*Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953) (quoting *Bridges v. Wixon*, 326 U.S. 135, 161 (1945) (Murphy, J., concurring)); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence [her] constitutional status changes accordingly."). To that end, permanent resident aliens who have lawfully entered the country "enjoy the same constitutional rights to due[-]process protection as do U.S. citizens."[8] *Ferreras v. Ashcroft*, 160 F. Supp. 2d 617, 629

---

[7] "Non-arriving aliens include lawful permanent residents, noncitizens who have valid visas, noncitizens who have overstayed their visas, and noncitizens who have otherwise entered the territorial boundaries without inspection by a federal agent." *Clerveaux v. Searls*, No. 18-CV-1131, 2019 WL 3457105, at *6 (W.D.N.Y. July 31, 2019).

[8] Therefore, U.S. citizens and lawful permanent residents may raise procedural-due-process claims with the following two-part test: (1) whether the individual possessed a protected liberty interest, and (2) whether the individual was

(S.D.N.Y. 2001). Finally, U.S. citizens stand atop this sliding scale of constitutional rights, enjoying some rights that no other persons may claim. *See United States v. Huitron-Guizar*, 678 F.3d 1164, 1167 (10th Cir. 2012) (stating that only natural-born U.S. citizens may run for president under Article II of the Constitution). The question is where Petitioner—an arriving alien who has never legally entered the United States—fits on this scale.

The Supreme Court has long held that an arriving alien does not receive the full slate of constitutional rights that a citizen or non-arriving alien would receive. In *Shaughnessy v. United States ex rel. Mezei*, the alien—Mezei—lawfully lived in the United States from 1923 to 1948. 345 U.S. 206, 208 (1953). He then left the United States for 19 months. *Id.* Upon his return he was excluded from the country and detained on the grounds that his entry "would be prejudicial to the public interest for security reasons." *Id.* Yet, the United States could not remove Mezei to another country because no other country would take him. *Id.* at 208–09. His detention therefore became indefinite, and he sought habeas relief. *Id.* at 209. The district court granted habeas relief, and the Second Circuit affirmed. *Id.*

In rejecting Mezei's constitutional challenge to his detention, the Supreme Court emphasized his status as an arriving alien.[9] The Supreme Court noted that "aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Id.* at 212. "But an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by

---

accorded an appropriate level of process under the circumstances. *See Romero v. Bd. of Cty. Comm'rs for the Cty. of Curry*, 202 F. Supp. 3d 1223, 1242–45 (D.N.M. 2016).

[9] Despite his having lived in the United States for many years, upon his return the Supreme Court considered him an arriving alien. *Mezei*, 345 U.S. at 213.

Congress is, it *is* due process as far as an alien denied entry is concerned.'" *Id.* (emphasis added) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)).

The Supreme Court therefore interpreted Mezei's procedural-due-process rights as coextensive with the procedure defined in the relevant immigration statutes. *Id.* at 212–16. Because Mezei had received the statutory process Congress had outlined, his continued detention did not violate the Fifth Amendment. *Id.* at 214–216. His status as an arriving alien played the critical constitutional role. *Id.* at 214; *see Landon*, 459 U.S. at 32; *Chew*, 344 U.S. at 596. The Fifth Amendment entitled Mezei to an extremely limited set of procedural-due-process rights: the process that the statute gave to immigrants in his situation, and nothing more.

The Tenth Circuit has interpreted *Mezei*'s holding twice. In the first case, *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir. 1981), the Tenth Circuit ostensibly cast doubt on whether it would adhere to the holding in *Mezei*. However, the holding in the second case, *Sierra v. INS*, 258 F.3d 1213 (10th Cir. 2001), reaffirms my belief that the Tenth Circuit will follow the basic holding of *Mezei*: that an arriving alien has a procedural-due-process right only to the procedure authorized by Congress in the relevant statutes. *Mezei*, 345 U.S. at 212.

*Rodriguez-Fernandez* involved a Mariel Cuban who arrived at Key West, Florida, aboard the so-called Freedom Flotilla.[10] Based on his criminal record and lack of immigration documents, immigration officers determined that Rodriguez-Fernandez was not entitled to enter and detained him pursuant to § 1225(b). *Rodriguez-Fernandez*, 654 F.2d at 1384. An immigration officer

---

[10] Mariel Cubans are those aliens who attempted to enter the United States in 1980 when "some 125,000 Cuban aliens arrived without visas in Florida aboard a flotilla of small boats," *Palma v. Verdeyen*, 676 F.2d 100, 101 (4th Cir. 1982), often referred to as the "Freedom Flotilla," *Rodriguez-Fernandez*, 654 F.2d at 1383.

subsequently ordered him deported. *Id.* However, Cuba refused to accept him. *Id.* Like Mezei, he remained in custody despite the inability of the United States to find a country that would accept him. *Id.* The district court ordered his release, and the government appealed. *Id.* at 1385.

On appeal, the government argued that, under *Mezei*, Rodriguez-Fernandez's status as an arriving alien meant that he enjoyed only limited constitutional protection. *Id.* at 1388. The Tenth Circuit disagreed. Calling *Mezei* "the nadir of the law with which the opinion dealt," it observed that the Supreme Court since *Mezei* had expanded the rights of aliens in other contexts. *Id.* (first citing *Hampton v. Mow Sun Wong*, 426 U.S. 88 (1976) (holding that the Civil Service Commission cannot deny lawfully admitted resident aliens substantial opportunities for federal employment under the Due Process Clause); and then citing *Graham v. Richardson*, 403 U.S. 365 (1971) (holding that states cannot restrict the eligibility of lawfully admitted resident aliens for welfare benefits under the Equal Protection Clause)). Moreover, because international law counseled against allowing the United States to indefinitely imprison human beings, the Tenth Circuit held that "*Mezei* does not compel the conclusion that no constitutional problems inhere in petitioner's detention status." *Id.* at 1388–89.

The Tenth Circuit noted that "an excluded alien in physical custody within the United States may not be 'punished' without being accorded the substantive[-] and procedural[-]due[-]process guarantees of the Fifth Amendment." *Id.* at 1387. It reasoned that the government could not order Rodriguez-Fernandez's execution—the ultimate denial of liberty under the Fifth Amendment—simply because Cuba would not accept him. *Id.* The Tenth Circuit derided the "euphemistic" entry fiction, stating that Rodriguez-Fernandez's detention "seems properly analogized to incarceration pending trial . . . and is, thus, justifiable only as a necessary,

temporary measure." *Id.* There was virtually no chance that Rodriguez-Fernandez would ever be released; the government continued to detain him long after Cuba refused to accept him. *See id.* Such detention, in lieu of deportation, "ha[d] become imprisonment" in violation of the Due Process Clause. *Id.*

The Tenth Circuit concluded that detention of aliens after proceedings necessary to determine eligibility to enter the country is permissible only during "a reasonable period of negotiations for their return to the country of origin." *Id.* at 1389. "After such a time . . . the alien would be entitled to release." *Id.* at 1389–90. *Rodriguez-Fernandez* therefore suggests that the United States cannot indefinitely detain aliens on the threshold of entry without running afoul of the Due Process Clause.

Yet, as the government argues here, even after *Rodriguez-Fernandez*, the Tenth Circuit has applied *Mezei* in holding that an alien not yet admitted to the United States enjoys only the process accorded to her by Congress. In *Sierra v. INS*, Sierra (also a Mariel Cuban) attempted to enter the United States. 258 F.3d at 1215–16. After he was denied entry, he was paroled into the United States. *Id.* While on parole, he was convicted of several crimes, prompting the Immigration and Naturalization Service ("INS")[11] to deny his application to become a lawful permanent resident. *Id.* at 1216. An immigration judge denied his application for asylum and ordered him deported. *Id.* Cuba refused to accept him. *Id.* The United States continued to detain Sierra for eight years. *Id.* Sierra applied for parole during his post-conviction detention, was briefly granted it, but the

---

[11] "On March 1, 2003, the INS was abolished and its functions divided among new agencies within the newly-formed Department of Homeland Security." *Corchado-Moya v. Gonzales*, 128 F. App'x 74, 75 n.1 (10th Cir. 2005). I will refer to the INS when discussing it as a defendant in *Sierra*, though it no longer exists.

government revoked it six months later.  *Id.*  None of Sierra's later requests for parole succeeded.  *Id.*  Sierra filed a habeas petition challenging the decisions to deny him parole under the Due Process Clause.  *Id.*

The Tenth Circuit began its analysis by emphasizing Sierra's status as an arriving alien: "Although he has been physically present in the United States for more than twenty years, Sierra is 'legally considered to be detained at the border and hence as never having effected entry into this country.'"  *Id.* at 1218 (quoting *Gisbert*, 988 F.2d at 1440).  As an arriving alien,

> [t]he Due Process Clause does not provide [Sierra] a liberty interest in being released on parole.  Ordinarily, then, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."

*Id.*  (third alteration in original) (quoting *Knauff*, 338 U.S. at 544).  In a footnote, the Tenth Circuit clarified that this "rule applies to procedural[-]due[-]process challenges such as Sierra's."  *Id.* at 1218 n.3.  It distinguished substantive-due-process challenges by citing to *Rodriguez-Fernandez*'s warning that "Congress could not order the killing of Rodriguez-Fernandez and others in his status on the ground that Cuba would not take them back."  *Id.* (quoting *Rodriguez-Fernandez*, 654 F.2d at 1387).  Because Sierra received the process owed to him under the relevant parole statutes, and his Fifth Amendment rights were coextensive with the process under the parole statutes, the Tenth Circuit held that his challenge to his detention under the Due Process Clause failed.  *Id.* at 1218–20.

*Sierra* therefore clarifies the Tenth Circuit's approach to an arriving alien's due-process rights.  The Tenth Circuit continues to follow *Knauff* and *Mezei*'s holding that the procedure authorized by Congress *is* due process for arriving aliens.  An arriving alien's procedural rights under the relevant statutes are coextensive with her Fifth Amendment's procedural-due-process

rights.  *Sierra* relied on this exact logic to reject Sierra's challenge to his detention.  *Id.*  *Sierra* remains the Tenth Circuit's most recent opinion deciding the rights of an arriving alien under *Mezei*'s framework, suggesting that the Tenth Circuit will continue to follow *Mezei*'s holding.  Moreover, *Sierra* did not ignore *Rodriguez-Fernandez*.  Rather, it stated that *Rodriguez-Fernandez* applied to *substantive*-due-process claims.  *See id.* at 1218 n.3.  The Tenth Circuit therefore has developed the following test that I must follow: Under the Fifth Amendment, an arriving alien has a substantive-due-process right to (at least) be free from certain abuses while detained.  However, an arriving alien has a procedural-due-process right only to the process accorded to her by Congress.[12]

Ignoring all pertinent Tenth Circuit precedent, Petitioner argues that recent Supreme Court cases suggest that arriving aliens like her enjoy greater Fifth Amendment protection.  Relying on

---

[12] At least two courts outside this district follow a similar rule.  *See Gisbert*, 988 F.2d at 1442 (5th Cir. 1993) ("[T]he continued INS detention of the petitioners [without an allegation of gross physical abuse] is not punishment and does not constitute a violation of the aliens' rights to substantive due process. . . . The Supreme Court has held, however, that excludable aliens are entitled only to those [procedural-]due[-]process rights as are provided by law."); *Cancino Castellar v. McAleenan*, 388 F. Supp. 3d 1218, 1244–46 (S.D. Cal. 2019) (finding that the entry fiction warranted dismissal of the excluded alien's procedural-due-process claims, but not the substantive-due-process claims).  Numerous courts within and outside the Tenth Circuit have continued to use the entry fiction to reject arriving aliens' due-process challenges to their detentions.  *See United States v. Gandara-Delgado*, No. 15-cr-0896 RB, 2015 WL 12861153, at *2 (D.N.M. June 16, 2015) ("[I]mmigrants facing exclusion from entry into the country, like Defendant, generally have fewer due process rights than immigrants facing deportation . . . 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" (quoting *Knauff*, 338 U.S. at 544)); *Perez-Diago v. Gunja*, 261 F. Supp. 2d 1246, 1248–49 (D. Colo. 2003) ("Even after *Zadvydas*, the law is clear that as an excludable Mariel Cuban, Petitioner is due only that process which Congress has provided in the form of the Cuban Review Plan.  Neither the statute nor the regulations compel his release."); *see also Hoyte-Mesa v. Ashcroft*, 272 F.3d 989, 991 (7th Cir. 2001) ("Since Hoyte, like Mezei, was never granted admission to the United States prior to his exclusion, the Fifth Amendment does not offer him the same protections as resident aliens who are subsequently ordered removed."); *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 650 (S.D.N.Y. 2018) ("[B]ecause the statutory language makes clear that aliens detained pursuant to Section 1225(b)(1)(A) have no statutory entitlement to bond hearings, and because *Mezei* instructs that, for aliens on the threshold of initial entry, the Constitution extends no farther than the statutory language itself, *Mezei* compels the conclusion that Petitioner's due[-]process rights have not been infringed."); *cf. Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 145 (D.D.C. 2018) ("While *Mezei* may be under siege, it is still good law, and it dictates that for an alien who has not effected an entry into the United States, '[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" (alteration in original) (quoting *Mezei*, 345 U.S. at 212)).

*Zadvydas*, *Demore*, and *Jennings*, she argues that the Due Process Clause requires an alien subjected to prolonged detention to be released or, at least, receive a bond hearing because the Fifth Amendment does not permit the indefinite detention of aliens. [Doc. 1] at 10–12. However, I believe that *Zadvydas* and *Demore* both support my reading of the above precedent, and *Jennings* expressly declined to decide any constitutional question.

In *Zadvydas*, the INS detained two resident aliens lawfully present in the country pending removal because they were convicted of separate crimes. 533 U.S. at 684–86. They were ordered removed due to these convictions. *Id.*; *see* 8 U.S.C. § 1227(a)(2)(A)(iii) (1994) (stating that aliens convicted of aggravated felonies are deportable); 8 U.S.C. § 1251(a)(2) (1988) (delineating crimes that make an alien deportable). The statute provided that aliens ordered removed under these circumstances "may be detained beyond the [90-day] removal period." § 1231(a)(6). Section 1231(a)(6) did not elaborate on how long this detention may last. *See id.* The INS had detained each resident alien long after the 90-day removal period, so each petitioned for habeas relief, arguing that the Fifth Amendment prevented their indefinite detentions. 533 U.S. at 684–86, 690.

Crucially, *Zadvydas* involved two resident (and therefore non-arriving) aliens, unlike *Mezei*, which involved an arriving alien who had not entered the United States. This distinction "made all the difference." *Id.* at 693. The United States had argued that *Mezei* meant that the INS could detain the petitioners indefinitely. *Id.* at 692. The Supreme Court rejected this argument, relying on the entry fiction. "It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Id.* at 693. "But once an alien enters the country, the legal circumstance changes, for the Due

14

Process Clause applies to all 'persons' within the United States, including aliens . . . ." *Id.* The Supreme Court distinguished Mezei from the petitioners in *Zadvydas*, stating, "Although *Mezei*, like the present cases, involves indefinite detention, it differs from the present cases in a critical respect. As the Court emphasized, the [alien] . . . was 'treated,' for constitutional purposes, 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). As resident aliens, the United States had admitted the petitioners in *Zadvydas*, entitling them to more constitutional protection. *See id.*

The Court then interpreted § 1231(a)(6)—the statute authorizing the petitioners' detentions—to include a requirement that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." *Id.* at 699. It did so to avoid the constitutional problem that could arise when indefinitely detaining non-arriving (resident) aliens. *Id. Zadvydas*'s holding plainly does not apply to arriving aliens. *See id.* at 693–94. Rather, it suggests that the Fifth Amendment protection owed to arriving aliens remains more limited than the protection owed to non-arriving aliens.

Petitioner relies on *Demore* to argue that it "is well[]established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." [Doc. 1] at 10 (second alteration in original) (quoting *Demore*, 538 U.S. at 523). However, *Demore* is inapposite for the same reason that *Zadvydas* held makes all the difference: It involved constitutional challenges from a non-arriving alien who had already entered the United States. In *Demore*, the Supreme Court held that the government may detain an alien under § 1226(c) pending a removal proceeding because "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings." *Demore*, 538 U.S. at 528. Section 1226(c) authorizes the detention pending removal proceedings of non-arriving aliens who

had already gained admission into the United States. *See id.* at 527–28. Unlike *Zadvydas*—which was concerned about the potentially indefinite detention of resident aliens—detention under § 1226(c) has "a definite termination point" because removal proceedings normally last "less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Id.* at 529. Therefore, § 1226(c) did not raise Fifth Amendment issues because it would not result in potentially indefinite detention. *Id.* at 529–30. Yet, like *Zadvydas*, *Demore* involved the constitutional rights of a non-arriving *resident* alien—an alien who, under *Zadvydas* and *Mezei*, has dramatically different Fifth Amendment rights than arriving aliens like Petitioner.

The Supreme Court's recent decision in *Jennings v. Rodriguez* does not change this analysis. In *Jennings*, numerous detained aliens challenged their prolonged detentions under various immigration statutes, including §§ 1225(b), 1226(a), and 1226(c). *See* 138 S. Ct. at 838–39. They filed a class-action lawsuit alleging that their detentions (1) violated the statutory provisions because those statutes had an implicit six-month limit on the length of detention, and (2) violated the Fifth Amendment. *Id.* at 839, 842–44, 851. Relying on the canon of constitutional avoidance, the Ninth Circuit held that §§ 1225(b) and 1226(c) imposed a six-month limit on the length of an alien's detention.[13] *Id.* at 839. Because it decided the case on statutory grounds, the Ninth Circuit did not reach any constitutional issues. *Id.* at 851.

The Supreme Court reversed, finding that "nothing in the text of [§ 1225] even hints that [its] provisions restrict detention after six months." *Id.* at 843. The canon of constitutional

---

[13] The Ninth Circuit also held that § 1226(a) required the government to give an alien bond hearings every six months and that "detention beyond the initial 6-month period is permitted only if the [g]overnment proves by clear[-]and[-]convincing evidence that further detention is justified." *Jennings*, 138 S. Ct. at 839.

avoidance only permits a court to choose between competing *plausible* interpretations of a statute. *Id.* Because the text did not support the Ninth Circuit's interpretation of the statutes, such an interpretation was implausible, and the canon of constitutional avoidance did not apply. *Id.* As the lower courts had not reached any constitutional questions, the Supreme Court remanded to allow them to consider the constitutionality of §§ 1225(b), 1226(a), and 1226(c) "in the first instance." *Id.* at 851.

The Supreme Court in *Jennings* expressly declined to pass upon the constitutionality of the allegedly indefinite detentions at issue. It certainly did not suggest that *Mezei* no longer remains in force. Though on remand the Ninth Circuit "doubt[ed] that any statute that allows for arbitrary prolonged detention without any process is constitutional," *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018), it remanded to let the district court decide this issue,[14] *id.* Ultimately, Petitioner simply argues that the Supreme Court's decision in *Jennings* indicates that "the constitutional rights of arriving aliens subject to prolonged detention is a closer question" than *Mezei* suggests. [Doc. 26] at 3. I disagree. Because the Supreme Court declined to pass on the constitutionality of indefinite detention of arriving aliens, *Mezei* and *Zadvydas* remain the most direct Supreme Court precedent applicable. Moreover, even if this question were "close[]," in such a situation I would still be bound by the Tenth Circuit's interpretation of *Mezei* and *Knauff*—which, as noted above, requires me to accord Petitioner only the procedural-due-process rights allowed by the relevant statutory scheme. *See Sierra*, 258 F.3d at 1218.

---

[14] The district court has not yet issued its opinion analyzing the constitutionality of indefinitely detaining arriving aliens.

Therefore, I must determine (1) whether Petitioner has received the process provided by the relevant statutes, and (2) whether her continued detention violates the substantive-due-process component of the Fifth Amendment.

### C. As an arriving alien who has not yet entered the United States, Petitioner is not entitled to be released or entitled to a bond hearing because the relevant statutes do not provide for that relief.

I first analyze Petitioner's procedural-due-process rights. Petitioner is an applicant for admission detained under § 1225(b)(2)(A).[15] [Doc. 24-1] at 3. Though the government released her on her own recognizance prior to her most recent detention, she had not yet been admitted to the United States and is still considered an arriving alien.[16] *See id.* at 3–5. Therefore, she is legally considered to be detained at the border. *See Sierra*, 258 F.3d at 1218; *see also Gisbert*, 988 F.2d at 1440. As a result, *Mezei* applies, and she is entitled only to the process accorded to her by the relevant statutes. *Sierra*, 258 F.3d at 1218. Petitioner has been previously released on her own recognizance and has had her parole requests denied. *See* [Doc. 1] at 6, 8–9. She does not argue that the relevant immigration statutes required a different process. Section 1225(b)(2) "*mandate[s]* detention of aliens throughout the completion of applicable proceedings." *Jennings*, 138 S. Ct. at 845 (emphasis added). "And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." *Id.* at 842. Petitioner has a statutory right to neither her release nor a bond hearing. Because her statutory rights are coextensive with her procedural-due-process

---

[15] Though Petitioner's removal order is considered final, because the Tenth Circuit has stayed her removal pending judicial review, Petitioner remains detained pursuant to § 1225(b)(2)(A), not § 1231(a). *See* § 1231(a)(1)(B)(ii).

[16] Petitioner does not contest that she remains an arriving alien even though she was released on her own recognizance. *See* [Doc. 26] at 2–3. Neither does Petitioner argue that she is entitled to more constitutional protection than other arriving aliens because she had been released on her own recognizance previously. The Court therefore applies the plain holdings of *Mezei* and *Sierra* that arriving aliens within the United States are entitled only to the process provided by statute.

rights, I recommend finding that her continued detention does not violate the procedural component of the Due Process Clause.

Petitioner correctly points out that many courts outside the Tenth Circuit have held that the Due Process Clause requires individualized hearings for aliens subjected to prolonged detentions. [Doc. 1] at 10–11 (collecting cases). However, many of these cases involved *non-arriving* aliens—aliens who, according to *Mezei* and *Sierra*, have more procedural-due-process rights than an arriving alien like Petitioner. *See, e.g.*, *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016) (lawful resident alien), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015) (lawful permanent resident), *vacated*, 138 S. Ct. 1260 (2018) (mem.); *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (student visa); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) (lawful permanent resident). Even if these cases supported Petitioner's arguments, they would not permit me to ignore binding Tenth Circuit and Supreme Court precedent.[17] Petitioner's procedural-due-process arguments therefore fail.

I next turn to the substantive component of the Due Process Clause. Any substantive-due-process claim that Petitioner could have raised is waived because she has failed to sufficiently brief one.[18] Though she does not expressly state whether she brings her habeas petition under the substantive or procedural component of the Due Process Clause, Petitioner devotes all her briefing to the argument that the United States has continued to detain her pursuant to an unconstitutional procedure—specifically, the lack of a bond hearing. *See, e.g.*, [Doc. 1]

---

[17] Petitioner seems to believe that simply citing to non-binding authority outside this district—without explaining why I should recommend adoption of it in this instance or how it interacts with published Tenth Circuit cases—is persuasive. *See, e.g.*, [Doc. 1] at 13; [Doc. 26] at 4–5. It is not.

[18] I am not convinced that Petitioner even *intended* to raise a substantive-due-process claim but, in the interest of completeness, I will explain why her briefing does not adequately raise one.

at 17–21; [Doc. 26] at 4–6.[19]  Such an argument may raise procedural-due-process concerns, but

not a substantive-due-process claim.  *See Romero v. Bd. of Cty. Comm'rs for the Cty. of Curry*,

202 F. Supp. 3d 1223, 1242 (D.N.M. 2016) ("The Due Process Clause encompasses two distinct

forms of protection: (i) procedural due process, which requires a state to employ fair procedures

when depriving a person of a protected interest; and (ii) substantive due process, which guarantees

that a state cannot deprive a person of a protected interest for certain reasons.").

A petitioner succeeds on a substantive-due-process challenge to a legislative enactment

when the government has unconstitutionally infringed on her liberty interests.  *Dias v. City & Cty.

of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009).  Under this approach, the petitioner bears the

burden to "careful[ly] descri[be] . . . the asserted fundamental liberty interest."  *Seegmiller v.

LaVerkin City*, 528 F.3d 762, 769 (10th Cir. 2008) (alterations in original) (quoting *Washington v.

Glucksberg*, 521 U.S. 702, 721 (1997)).  "[V]ague generalities . . . will not suffice."  *Id.* (quoting

*Chavez v. Martinez*, 538 U.S. 760, 776 (2003)).  Once the petitioner carefully describes the liberty

interest, she must demonstrate that it is a "fundamental" liberty interest, one that "is 'objectively,

deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty,

such that neither liberty nor justice would exist if [it was] sacrificed.'"  *Id.* (quoting *Glucksberg*,

---

[19] And every case Petitioner cites when arguing that her detention has become unconstitutionally prolonged has analyzed the *procedural*-due-process claim that prolonged detention without a bond hearing violates the Due Process Clause.  *See Sopo*, 825 F.3d 1199; *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, Nos. 14-1270, 14-1803, 14-1823, 2018 WL 4000993 (1st Cir. May 11, 2018); *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015), *abrogation recognized by Guerro-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208 (3d Cir. 2018); *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019), *appeal docketed Banda v. USDHS*, No. 19-35683 (9th Cir.); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435 (D.N.J. 2019); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. 2019); *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108 (S.D.N.Y. July 25, 2018); *Maniar v. Warden Pine Prairie Corr. Ctr.*, CASE NO. 6:18-CV-00544 SEC P, Report and Recommendation (W.D. La. July 11, 2018); *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018); *Salazar v. Rodriguez*, Civil Action No. 17-1099 (JMV), 2017 WL 3718380 (D.N.J. Aug. 29, 2017), *appeal docketed Salazar v. Tsoukaris*, No. 17-3367 (3d Cir.); *Singh v. Lowe*, CIVIL NO. 3:17-CV-119 (M.D. Pa. Mar. 7, 2017).

521 U.S. at 721). If the petitioner demonstrates that her asserted liberty interest is fundamental, then the court applies heightened scrutiny, whereby it will uphold the statute only if it is narrowly tailored to serve a compelling statute interest. *Id.* at 771. If the asserted liberty interest is not fundamental, then the court applies rational-basis scrutiny, whereby it will uphold the statute if it is "rationally related to a legitimate state interest." *Id.*

To the extent Petitioner meant to raise both procedural- and substantive-due-process arguments, she has insufficiently briefed the substantive component and therefore waived it. *See Xtomic, LLC v. Active Release Techniques, LLC*, 340 F. Supp. 3d 1092, 1105 (D. Colo. 2018). Petitioner does not mention substantive due process in her briefing and never cites to any legal authority that she claims supports a finding of a substantive-due-process violation. *See supra* note 19. She does not explain why her detention triggers heightened scrutiny as opposed to rational-basis review, and she has not defined her liberty interest in a way rising above a vague generality.[20] *See Glucksberg*, 521 U.S. at 767–67, 767 n.9; *Seegmiller*, 528 F.3d at 771. Declining to act as Petitioner's advocate and delve into this analysis is appropriate where she does not properly identify the precise liberty interest at issue. *See Glucksberg*, 521 U.S. at 767 n.9 ("[B]y insisting on a threshold requirement that the interest . . . be fundamental before anything more than rational[-]basis justification is required, the Court ensures that not every case will require the 'complex balancing' that heightened scrutiny entails."); *cf. Hoang v. Comfort*, 282 F.3d 1247,

---

[20] In fact, in her Petition, Petitioner devotes one single sentence to explaining why, in this instance, due process requires her release (irrespective of a bond hearing): "Given the constitutional limits of prolonged detention, due process requires that Ms. Gonzalez Aguilar, who has been detained for almost 20 months, be released from detention." [Doc. 1] at 13. Even if I construed this statement as an invocation of the Fifth Amendment's substantive-due-process protection, such a conclusory statement comes nowhere near to meeting Petitioner's burden to establish a substantive-due-process violation.

1257 (10th Cir. 2002) ("[W]e conclude that the petitioners [lawful permanent residents] have a fundamental liberty interest in freedom from detention pending deportation proceedings that may only be infringed upon *in certain limited circumstances*." (emphasis added)), *vacated*, *Weber v. Phu Chan Hoang*, 538 U.S. 1010 (2003). Ultimately, "[t]hough [Petitioner] appears to vaguely request that the Court 'order immediate release[,]' the Petitioner has failed to identify which claim would entitle [her] to such relief, nor is such a claim apparent to the Court." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *6 n.6 (S.D.N.Y. July 25, 2018) (second alteration in original).

Neither party seems to believe that Petitioner is asserting a substantive-due-process claim, and without the benefit of more detailed briefing I cannot recommend granting Petitioner relief on such a claim. Therefore, Petitioner has not sufficiently raised a substantive-due-process challenge to her detention, and I recommend that the Court consider it waived.

Finally, I am not convinced that a substantive-due-process claim, even if properly asserted, would succeed under Tenth Circuit law. Unlike the facts in *Rodriguez-Fernandez*, Petitioner has not shown that if the United States were to remove her, Honduras would not accept her. As the government argues, her detention will end when her removal proceedings end. *See* [Doc. 24] at 9. Again, Petitioner has not alleged that Honduras would not accept her if the United States tried to remove her. Therefore, her situation is easily distinguishable from *Rodriguez-Fernandez*. *See Rodriguez-Fernandez*, 654 F.2d at 1386–87; *cf. Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) ("[E]ven if Mr. Mwangi could successfully characterize his claim as constitutional, he is not like the aliens in *Zadvydas*. In that case, the aliens had already been ordered removed, they had exhausted their administrative and judicial remedies, and yet the government could not secure

their removal because the designated countries either refused to accept them or maintained no repatriation agreement with the United States. . . . [Here], there is no indication that Mr. Mwangi is unremovable, whether it be for lack of a repatriation agreement or because his designated country will not accept him. Under these circumstances, Mr. Mwangi's detention is not indefinite.").

Petitioner has received the process provided to her by Congress. She has not sufficiently raised any substantive-due-process challenge and, even if she had, her case would be readily distinguishable from *Rodriguez-Fernandez*. I recommend denying her Petition.

**D.** **I recommend denying Petitioner's request for costs and attorney fees under the Equal Access to Justice Act because I recommend finding that she is not the prevailing party.**

Petitioner requests her costs and reasonable attorney fees in this action under the Equal Access to Justice Act ("EAJA"). [Doc. 1] at 20. EAJA only permits an award of costs and reasonable attorney fees to a "prevailing party," however. 28 U.S.C. § 2412(a)(1), (b) (2019). Because I recommend denying Petitioner's Petition, I recommend denying her request for EAJA fees as she is not the prevailing party.

## IV.    CONCLUSION

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Petitioner's Petition

for a Writ of Habeas Corpus [Doc. 1] be **DENIED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**