OSCAR ALEXIS GONZALEZ AGUILAR,

    Petitioner,[1]

v.                                                                                       No. 1:19-cv-0412 WJ/SMV

CHAD F. WOLF,[2] MATTHEW T. ALBENCE,
WILLIAM P. BARR, JOSE M. CORREA,[3]
DEAN KING, and CHAD MILLER,

    Respondents.

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

THIS MATTER is before the Court on the Petition for a Writ of Habeas Corpus (Doc. 1), filed May 3, 2019, by Petitioner Oscar Alexis Gonzalez Aguilar ("Petitioner"). The Court referred this Petition to the Honorable Stephan M. Vidmar, United States Magistrate Judge, for proposed findings and a recommended disposition, on May 8, 2019. (Doc. 3). Having reviewed the Parties' briefing and considered the applicable law, the Court finds that Petitioner's objections to the

---

[1] Petitioner identifies as female and uses the first name Kelly and female pronouns. (Doc. 1 at 2 n.1.) As the magistrate judge did, the Court will refer to Petitioner as "she" or "her."

[2] Kevin McAleenan, previously named as Respondent, resigned as the Acting Secretary of Homeland Security, and the President appointed Chad F. Wolf as the Acting Secretary of Homeland Security on November 13, 2019. *See Chad F. Wolf*, Homeland Security (Nov. 13, 2019), https://www.dhs.gov/person/chad-f-wolf. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Chad F. Wolf should be substituted for McAleenan as a Respondent in this suit. *See* Fed. R. Civ. P. 25(d).

[3] Petitioner originally named Floyd Sam Farmer as a Defendant in this case. Jose M. Correa is Farmer's successor as Acting Field Office Director at the El Paso Field Office of U.S. Immigration and Customs Enforcement. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Jose M. Correa should be substituted for Farmer as a Respondent in this suit. *See* Fed. R. Civ. P. 25(d).

Proposed Findings and Recommended Disposition ("PFRD") are **OVERRULED**, the PFRD is **ADOPTED**, and the Petition is, therefore, **DENIED**.

## BACKGROUND

**A.     Factual Background**

Petitioner is a transgender woman fleeing persecution in her home country of Honduras. (Doc. 1 at 2, 5–6.) She arrived at the U.S. border on or about June 16, 2014, at the age of 17, seeking asylum. *Id.* at 6; (Doc. 24 at 2.) However, she had no valid entry documents, so the government detained her. (Doc. 24-1 at 2.) In 2014, the government released her from custody on an Order of Release on Recognizance, allowing her to live in the United States while her asylum claim remained pending. *Id.* Petitioner traveled to Louisiana in 2017, where she was arrested and charged with prostitution and crimes against nature. *Id.* Louisiana authorities transferred Petitioner to Immigration and Customs Enforcement ("ICE") custody on August 31, 2017. *Id.* at 3. ICE revoked her Order of Release on Recognizance and detained her under 8 U.S.C. § 1225(b)(2)(A) as an alien seeking admission into the United States. *Id.*

**B.     Procedural Background**

Petitioner remains in custody. *Id.* The Department of Homeland Security denied her requests for parole or to be released on her own recognizance. (Doc. 1 at 8–9.) In May of 2018, an immigration judge denied Petitioner's asylum claim and ordered her removed to Honduras. (Doc. 24-1] at 3.) The Board of Immigration Appeals affirmed the denial of her asylum claim and the order of removal. *Id.*

Petitioner appealed the Board of Immigration Appeals' decision to the Tenth Circuit. *Gonzalez Aguilar v. Barr*, No. 18-9570 (10th Cir. filed Nov. 18, 2018). On December 17, 2018,

the Tenth Circuit granted her motion to stay her removal, noting that she is likely to succeed on the merits of her appeal. *Gonzalez Aguilar*, No. 18-9570 (Doc. 010110098599 at 1.) The Tenth Circuit has yet to rule on Petitioner's appeal and she remains detained.

Petitioner filed her Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 in this Court on May 3, 2019. (Doc. 1.) She argued that her continued detention violates the Fifth Amendment's Due Process Clause, which allegedly compels the government either to release her or provide her with an individualized bond hearing to determine whether she presents a flight risk of danger to the community. *See id.* at 2. Respondents argued that because Petitioner has not been admitted into the United States, she is an arriving alien who has no Fifth Amendment right to release or a bond hearing. (Doc. 24 at 4–7 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)).) They also argued, *inter alia*, that her detention does not violate the Fifth Amendment because the government will not detain her indefinitely. *Id.* at 7–9.

In her Reply, Petitioner advanced two arguments relevant here. First, she argued that courts "routinely [find] that lengthy immigration detention is subject to due[-]process limits." (Doc. 26 at 2.) Second, she argued that the Supreme Court's recent decision in *Jennings v. Rodriguez* "indicates that the constitutional rights of arriving aliens subject to prolonged detention is a closer question" than Respondents suggested. *Id.*

C. **The Magistrate Judge's Proposed Findings and Recommended Disposition**

The magistrate judge issued his PFRD on November 8, 2019. (Doc. 27.) He recommended that the Court deny the Petition because Petitioner is an arriving alien, and as such, is owed only the procedural due-process protections as required by statute. *Id.* at 18–19. The magistrate judge began by analyzing the statutory structure applicable to Petitioner. *See id.* at 4–6. He noted that

Petitioner is an arriving alien because she was detained while seeking admission to the United States and has never lawfully been admitted into the United States.[4] *Id.* at 5. The government has detained her under 8 U.S.C. § 1225(b)(2), which mandates the detention of aliens for removal proceedings if an immigration officer determines that the aliens are not entitled to be admitted to the United States. *Id.* (citing *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018)). The magistrate judge explained that though the relevant immigration statutes permit the government to allow arriving aliens within U.S. borders—for example, by using the parole authority to permit an alien to live in the United States for humanitarian reasons—"such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Id.* at 6 (quoting *Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1440 (5th Cir. 1993)). He concluded that no statutory provision compelled Petitioner's release or a bond hearing. *Id.* (citing *Jennings*, 138 S. Ct. at 842–46).

The magistrate judge then discussed the reach of the Fifth Amendment Due Process Clause. He stated, "The scope of an alien's constitutional rights often depends on her immigration status." *Id.* at 7. For example, though permanent resident aliens lawfully in the United States have the same due-process rights as U.S. citizens, arriving aliens do not necessarily have all of these rights. *Id.* at 7–8. He began by analyzing the primary case relied upon by Respondents to argue that Petitioner possesses a limited set of due-process rights: *Shaughnessy v. United States ex rel. Mezei*. There, an alien attempted to re-enter the United States after having been outside the country for

---

[4] Arriving aliens are defined as aliens seeking admission into the United States. *See* 8 U.S.C. § 1225(b) (2018); 8 C.F.R. § 1.2 (2019). Non-arriving aliens, on the other hand, include "lawful permanent residents, noncitizens who have valid visas, noncitizens who have overstayed their visas, and noncitizens who have otherwise entered the territorial boundaries without inspection by a federal agent." *Clerveaux v. Searls*, No. 18-CV-1131, 2019 WL 3457105, at *6 (W.D.N.Y. July 31, 2019).

4

19 months. 345 U.S. at 208. Upon his return, he was excluded from the United States and detained because his entry would have compromised national security. *Id.* The United States attempted to remove him, but no other country would accept him; his detention thus became indefinite. *Id.* at 208–09. Mezei sought habeas relief, but the Supreme Court rejected it, emphasizing his status as an arriving alien. According to the Supreme Court, for an alien "on the threshold of initial entry . . . 'Whatever the procedure authorized by Congress is, it *is* due process as far as an alien denied entry is concerned.'" *Id.* at 212 (emphasis added) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). Because the Attorney General declined to release Mezei on bond, and the relevant statutes required nothing more, the Supreme Court found that Mezei's continued exclusion did not deprive him of any statutory or constitutional right. *Id.* at 212–16.

Next, the magistrate judge discussed the Tenth Circuit's treatment of *Mezei*. (Doc. 27 at 9–13.) First, in *Rodriguez-Fernandez v. Wilkinson*, the Tenth Circuit granted an arriving alien's petition for a writ of habeas corpus. There, immigration officials determined that an arriving alien, Rodriguez-Fernandez, was not entitled to enter the United States and detained him under § 1225(b). 654 F.2d 1382, 1384 (10th Cir. 1981). Because his home country of Cuba would not accept him, his detention became indefinite. *See id.* at 1384, 1389. Rodriguez-Fernandez petitioned the court for his release. *See id.* at 1385. The government argued that, under *Mezei*, Rodriguez-Fernandez's status as an arriving alien required that he be given only the process as outlined in the relevant immigration statutes. *See id.*

The Tenth Circuit construed the applicable statutes to require Rodriguez-Fernandez's release. *Id.* at 1386. It then explained, "Nevertheless, it seems important to discuss the serious constitutional questions involved if the statute were construed differently." *Id.* The Tenth Circuit

disagreed with the government's interpretation of *Mezei*. It noted that "*Mezei* has been criticized as the nadir of the law with which the opinion dealt." *Id.* at 1388. The Tenth Circuit stated that the government could not execute Rodriguez-Fernandez simply because Cuba would not accept him back if the United States tried to remove him. *Id.* at 1387. Finding that due process had evolved to grant aliens more rights than they had at the time the Supreme Court decided *Mezei*, and finding that international law counseled against Rodriguez-Fernandez's continued detention, the Tenth Circuit ordered his release. *Id.* at 1388–90. The magistrate judge noted that "*Rodriguez-Fernandez* therefore suggests that the United States cannot indefinitely detain [aliens] without running afoul of the Due Process Clause." (Doc. 27 at 11.)

The magistrate judge continued, however, by finding that the Tenth Circuit, after *Rodriguez-Fernandez*, has still relied on *Mezei*'s statement that arriving aliens enjoy only the process accorded to them by Congress. *Id.* For example, in *Sierra v. INS*, the government detained Sierra (an arriving alien) after he was disciplined for fighting while on parole. 258 F.3d 1213, 1215–16 (10th Cir. 2001). Shortly thereafter, the government ordered him deported, but his home country of Cuba refused to accept him. *Id.* Though Sierra was granted parole during his detention, the government revoked it, and none of his later requests for parole succeeded. *Id.* at 1216. He then filed a habeas petition challenging the government's decisions to deny him parole under the procedural component of the Due Process Clause. *See id.* at 1216, 1218. He argued that the decision to revoke his parole without a hearing, and the decision to revoke his parole while his appeal of the disciplinary decision was pending, violated his procedural due-process rights. *See id.* at 1215–16.

The Tenth Circuit rejected Sierra's challenge. It stated,

> Although he has been physically present in the United States . . . Sierra is "legally considered to be detained at the border and hence as never having effected entry into this country." The Due Process Clause does not provide him a liberty interest in being released on parole. Ordinarily, then, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."

*Id.* at 1218 (citation omitted) (first quoting *Gisbert*, 988 F.2d at 1440; and then quoting *Knauff*, 338 U.S. at 544). The Tenth Circuit then found that the government complied with the relevant statutory procedures when denying Sierra's parole applications. *Id.* at 1218–20. Because "[n]either the statutes nor the governing regulations" required additional procedures beyond those that Sierra received, "[t]he lack of a hearing and opportunity to await the disciplinary appeal . . . [did] not deny Sierra the due process of law." *Id.* at 1219–20. The Tenth Circuit distinguished *Rodriguez-Fernandez* in a footnote, stating that "[*Sierra*] did not involve, and we do not address, a substantive due[-]process challenge to congressional legislation." *See id.* at 1218 n.3 (citing *Rodriguez-Fernandez*, 654 F.2d at 1387).

The magistrate judge concluded that, based on *Mezei*, *Knauff*, *Rodriguez-Fernandez*, and *Sierra*, an arriving alien has the Fifth Amendment "substantive[]due-process right to (at least) be free from certain abuses while detained. However, an arriving alien has a procedural[]due-process right only to the process accorded to her by Congress."[5] (Doc. 27 at 13.) The magistrate judge

---

[5] The magistrate judge also analyzed more recent Supreme Court decisions, finding that none of them suggested that arriving aliens enjoyed greater procedural due-process protection than what Congress provided to them in the relevant statutes. *See* (Doc. 27 at 13–17 (first citing *Zadvydas v. Davis*, 533 U.S. 678 (2001); then citing *Demore v. Kim*, 538 U.S. 510 (2003); and then citing *Jennings*, 138 S. Ct. 830 (2018)).) In particular, the magistrate judge found persuasive *Zadvydas*' statement, "Although *Mezei*, like the present case, involves indefinite detention, it differs from the present cases in a critical respect. As the Court emphasized [in *Mezei*], the [alien] . . . was 'treated,' for constitutional purposes, 'as if stopped at the border.'" (Doc. 27 at 15 (second alteration in original) (quoting *Mezei*, 345 U.S. at 215).) The magistrate judge also found that *Jennings* expressly declined to discuss the constitutionality of prolonged detentions of arriving aliens. *Id.* at 17.

7

found that numerous courts outside the District of New Mexico follow a similar rule. *See id.* at 13 n.12.

The magistrate judge construed the Petition as challenging Petitioner's detention on procedural (not substantive) due-process grounds.[6] *Id.* at 19, 22. Because the relevant statutes required neither her release nor a bond hearing, the magistrate judge recommended that the Court reject her procedural due-process challenge to her detention. *Id.* at 18–19. The magistrate judge then recommended that, even if Petitioner had raised a substantive due-process challenge, the Court should reject it because Petitioner's case is readily distinguishable from *Rodriguez-Fernandez*: Petitioner will not be detained indefinitely because she has not alleged that Honduras would refuse to accept her if the United States tried to remove her. *Id.* at 22.

Petitioner timely objected to the PFRD on November 22, 2019. (Doc. 28.) Respondents responded on December 5, 2019. (Doc. 29.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) governs objections to a magistrate judge's PFRD on a dispositive issue. Rule 72(b)(2) provides that a party may file written objections to a PFRD no later than 14 days after service of the PFRD. Fed. R. Civ. P. 72(b)(2). After receiving objections, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

---

[6] As Petitioner does not object to this characterization of her Petition, the Court adopts it.

8

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Under the firm waiver rule, "theories raised for the first time in objections to the magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1030–31 (10th Cir. 2001).

## DISCUSSION

Petitioner argues that the magistrate judge erred for six reasons. First, she argues that the magistrate judge improperly relied on dicta in *Mezei* to find that arriving aliens are due only the process codified in the related immigration statutes. (Doc. 28 at 2–3.) Second, she argues that *Mezei*'s alleged dicta only applies to aliens suspected of being a danger to national security. *Id.* at 4. Third, she argues that *Mezei* does not apply to aliens who request release from detention. *Id.* at 3–4. Fourth, she contends that dicta from the Tenth Circuit in *Rodriguez-Fernandez* narrowed the applicability of *Mezei* to situations not present here. *See id.* at 5–6. Fifth, she argues that the magistrate judge's application of *Sierra* is at odds with *Rodriguez-Fernandez* and that *Sierra* is distinguishable. *Id.* at 6–7. Finally, she argues that a "rising tide of jurisprudence" supports "finding prolonged detention of arriving aliens unconstitutional." *Id.* at 7–8.

**A. The Court declines to consider Petitioner's first three arguments because she waived them.**

The United States argued in its Response that *Mezei* compelled the Petition's denial, (Doc. 24 at 5–10.), and Petitioner made two—and only two—arguments against it in her Reply: (1) other courts have found that "lengthy immigration detention is subject to due process limits," and (2) the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), "left undecided the question of *constitutional* due[-]process limits of detention for arriving aliens." (Doc. 26 at 2–3.) She did not argue that *Mezei*'s statement that arriving aliens are due only the statutory process is dicta, nor that *Mezei* applied only to aliens considered threats to national security, nor that *Mezei*'s language did not apply to her because she requested release from detention.[7] *See* (Doc. 26.) Under the firm waiver rule, because she raised these legal theories for the first time in her Objections, they are waived. *See Garfinkle*, 261 F.3d at 1030–31.

**B. Petitioner's remaining arguments lack merit.**

In her fourth and fifth objections to the PFRD, Petitioner argues that the magistrate judge misapplied dicta in *Rodriguez-Fernandez* suggesting that courts should not interpret *Mezei* broadly, instead relying on language in *Sierra* that Petitioner contends does not limit

---

[7] Petitioner did say in her Reply, "Respondents rely on a 1953 Cold War-era national security case to argue for [her] lack of due[-]process rights." (Doc. 26 at 3 (citing *Mezei*, 345 U.S. 206).) Yet, she never argued, as she does now, that *Mezei only* applied to cases involving alleged threats to national security. Moreover, no indication exists that the aliens in *Sierra* or other cases threatened national security, and courts still applied *Mezei*'s rule to them. *See Sierra*, 258 F.3d at 1216; *see also Hoyte-Mesa v. Ashcroft*, 272 F.3d 989, 991–92 (7th Cir. 2001); *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 647–49 (S.D.N.Y. 2018); *Castellar v. McAleenan*, 388 F. Supp. 3d 1218, 1244–46 (S.D. Cal. 2019). For example, *Zadvydas* never indicated that the non-arriving aliens at issue there were threats to national security, but rather than distinguishing *Mezei* on this ground, the Supreme Court "reaffirmed its decision in *Mezei*," *Hoyte-Mesa*, 272 F.3d at 991, emphasizing that the non-arriving aliens in that case presented "a very different question" than the detention of arriving aliens who had lesser procedural due-process rights—while simultaneously showing that *Mezei*'s territorial analysis is not, as Petitioner argues, dicta. *Zadvydas*, 533 U.S. at 682; *see id.* at 694 ("[B]oth this Court's rejection of Mezei's challenge to the procedures by which he was deemed excludable and its rejection of his challenge to continued detention rested upon a basic territorial distinction.").

*Rodriguez-Fernandez*'s application. (Doc. 28 at 5–7.) According to her, *Rodriguez-Fernandez* "explained that *Mezei* must be construed in light of the unique facts of that case and evolving notions of due process. The Magistrate Judge's findings fail to heed that warning." *Id.* at 6. The magistrate judge rejected application of *Rodriguez-Fernandez* to the instant case for two reasons. First, he noted that Petitioner brought a procedural due-process claim, and *Rodriguez-Fernandez* applied only to substantive due-process claims. (Doc. 27 at 12–13.) Second, he found that even if *Rodriguez-Fernandez* applied to this case, it would not compel Petitioner's release because she will not be detained indefinitely; unlike *Rodriguez-Fernandez*, the record contained no indication that Honduras would not accept her if the United States tried to remove her. *Id.* at 22. For the following reasons, I overrule Petitioner's objections.

Petitioner agrees that the Tenth Circuit decided *Rodriguez-Fernandez* on statutory, not constitutional, grounds. (Doc. 28 at 5.) As the Tenth Circuit later recognized, "any discussion of the constitutionality of indefinite detention in *Rodriguez-Fernandez* is *dicta* and is not binding." *Ho v. Greene*, 204 F.3d 1045, 1057 (10th Cir. 2000), *overruling in part on other grounds recognized by Riley v. INS*, 310 F.3d 1253 (10th Cir. 2002).

Moreover, the Court agrees with the magistrate judge that the Tenth Circuit later clarified that *Rodriguez-Fernandez*'s dicta applied only to substantive due-process claims, not procedural due-process claims. In *Sierra*, the Tenth Circuit analyzed an arriving alien's continued detention after he was ordered deported. 258 F.3d at 1216. The United States had detained Sierra for eight years, and his home country refused to accept him. *Id.* If *Rodriguez-Fernandez*'s dicta governed *Sierra*, it would have suggested releasing Sierra (or at least providing some relief to him), for *Rodriguez-Fernandez* stated that the mere fact that a non-arriving alien's home country refused to

11

accept him did not justify his indefinite detention. *See Rodriguez-Fernandez*, 654 F.2d at 1387–90.

Yet, the Tenth Circuit did not apply *Rodriguez-Fernandez*'s dicta in *Sierra*. It distinguished substantive due-process challenges like that in *Rodriguez-Fernandez* from Sierra's procedural due-process challenge, citing *Rodriguez-Fernandez*'s statement that "Congress could not order the killing of Rodriguez-Fernandez and others in his status on the ground that Cuba could not take them back." *Sierra*, 258 F.3d at 1218 n.3  Unlike the hypothetical substantive due-process case of the United States' executing an alien because it could not remove him, *Sierra*, like the instant case, involved a procedural due-process challenge to the decision to continue to detain an arriving alien. *See id.* at 1217–18, 1218 n.3. As Sierra received the process outlined by the relevant parole statutes, the Tenth Circuit rejected his challenge to his detention under the Due Process Clause. *Id.* at 1218–20.

*Sierra*, rather than enlarging *Rodriguez-Fernandez*'s dicta, narrowed it. It stated that *Mezei*'s rule "applies to procedural due[-]process challenges," but not substantive due-process claims. *Id.* at 1218 n.3. *Rodriguez-Fernandez*'s warnings about broadly interpreting *Mezei* arose in the context of substantive due-process claims—where the government could severely restrict life or liberty. *Id.* The magistrate judge did not "fail to heed," (Doc. 28 at 6.), *Rodriguez-Fernandez*'s warnings; he properly cabined those warnings to substantive due-process claims, just as *Sierra* did. Though Petitioner notes that the Tenth Circuit decided *Sierra* on statutory, not constitutional, grounds, for the above reasons, and because it represents a more

12

recent discussion of the subject than *Rodriguez-Fernandez*, the Court finds *Sierra*'s discussion on the limits of *Mezei* more persuasive than *Rodriguez-Fernandez*'s discussion.[8]

Moreover, the Court agrees with the magistrate judge that *Rodriguez-Fernandez* is distinguishable from the instant case. The United States argued, the magistrate judge found, and Petitioner does not contest that the government will not indefinitely detain her. *See* (Doc. 24 at 9–10.); (Doc. 27 at 22–23.); (Doc. 28.) In *Rodriguez-Fernandez*, the United States had attempted to remove the alien but continued to detain him after his home country refused to accept him. 654 F.2d at 1387. Stressing that his continued detention constituted an indefinite detention, the Tenth Circuit stated that such indefinite detention likely violated the Due Process Clause. *See id.* at 1386–89. Yet, the magistrate judge found that, unlike *Rodriguez-Fernandez*, no allegations here suggest that the government will detain Petitioner indefinitely; she does not, for example, allege that Honduras would not accept her if the United States tried to remove her. (Doc. 27 at 22–23.) Thus, the magistrate judge found that Petitioner failed to show that the government will indefinitely detain her. *See id.* Petitioner's detention will end either when the government grants her asylum or when it removes her, and Petitioner identifies no Tenth Circuit or Supreme Court case holding that such detention violates the Due Process Clause. *See Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) ("[T]here is no indication that Mr. Mwangi is unremovable, whether it be for lack of a repatriation agreement or because his designated country will not accept him. Under these circumstances, Mr. Mwangi's detention is not indefinite."); *Marczak v. Greene*,

---

[8] Additionally, other courts disagree with *Rodriguez-Fernandez*'s dicta, further casting doubt on whether the Tenth Circuit would continue to adhere to it. *See, e.g.*, *Jean v. Nelson*, 727 F.2d 957, 974–75 (11th Cir. 1984) ("[W]e detect . . . significant problems that prevent us from endorsing the [T]enth [C]ircuit's reasoning. [One problem]— which is controlling from our point of view—is that it cannot be reconciled with the Supreme Court's decision in *Mezei*, which held that an excludable alien could not challenge his continued detention without a hearing.").

971 F.2d 510, 514 n.7 (10th Cir. 1992); *see also Amanullah v. Nelson*, 811 F.2d 1, 9 n.4 (1st Cir. 1987) ("[Rodriguez-Fernandez's] detention had become 'imprisonment . . . prolonged; perhaps . . . permanent.' In contrast, the present petitioners are still in the midst of exclusion/asylum proceedings; their detention, pending resolution of such ongoing matters, is in no veridical sense 'indefinite or permanent.'" (first quoting *Rodriguez-Fernandez*, 654 F.2d at 1385; and then quoting *Bertrand v. Sava*, 684 F.2d 204, 207 n.6 (2d Cir. 1982))); *In re Pierre*, 605 F. Supp. 265, 268 (E.D. Pa. 1985) (holding that the petitioner's incarceration, unlike Rodriguez-Fernandez, "is not of indefinite duration; he remains incarcerated only until a final determination of his application for asylum has been rendered. Thereafter, he will be free to live in the United States or he will be deported."). The Court therefore overrules Petitioner's fourth and fifth objections to the PFRD.

In Petitioner's final objection, she argues that *Rodriguez-Fernandez* requires courts to construe *Mezei* in light of "evolving notions of due process." (Doc. 28 at 6.) She argues that a "rising tide of due[-]process jurisprudence [suggests that] prolonged detention of arriving aliens [is] unconstitutional." *Id.* at 7. The magistrate judge found that though Petitioner cited to persuasive authority allegedly agreeing with this proposition, she failed to explain why the Court should adopt it in this instance. He found that she simply argued in a conclusory fashion that because other courts found that Due Process Clause required the United States to provide arriving aliens with bond hearings, this Court should follow suit. (Doc. 27 at 19 n.17.) The magistrate judge also noted that numerous courts have held the opposite, finding that that Due Process Clause does not entitle arriving aliens to release from detention or to bond hearings. *See id.* at 13 n.12.

The Court declines to hold that evolving notions of due process compel Petitioner's release or the provision of a bond hearing. Though some courts have so held, numerous other courts disagree, including the Supreme Court in *Mezei* and *Knauff*. *See Hoyte-Mesa v. Ashcroft*, 272 F.3d 989, 991 (7th Cir. 2001); *Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1442–43 (5th Cir. 1993); *Castellar v. McAleenan*, 388 F. Supp. 3d 1218, 1244–46 (S.D. Cal. 2019); *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 650 (S.D.N.Y. 2018); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 144–45 (D.D.C. 2018); *United States v. Gandara-Delgado*, No. 15-cr-0896 RB, 2015 WL 12861153, at *2 (D.N.M. June 16, 2015); *see also Perez-Diago v. Gunja*, 261 F. Supp. 2d 1246, 1248–49 (D. Colo. 2003). The magistrate judge relied on these cases to find that the Due Process Clause does not entitle Petitioner to release or a bond hearing, (Doc. 27 at 13 n.12.), and Petitioner fails to meaningfully respond to any of them. At most, Petitioner can show that courts sharply disagree about the reach of the Due Process Clause as applied to arriving aliens. Given such disagreement, Petitioner fails to show that due process has evolved to the point where it compels her release or a bond hearing. Petitioner's sixth objection is overruled.

"While *Mezei* may be under siege, it is still good law, and it dictates that for an alien who has not effected an entry into the United States, '[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Aracely, R.*, 319 F. Supp. 3d at 145 (alteration in original) (quoting *Mezei*, 345 U.S. at 212); *see Chi Thon Ngo v. INS*, 192 F.3d 390, 396 (3d Cir. 1999) ("*Mezei* has been much criticized, but has remained a governing precedent and has been applied, with some modifications, in most of the leading cases." (footnote omitted)). *Mezei* and its progeny do not hold that Petitioner has no due-process rights; rather, the applicable statutory process shapes her procedural due-process rights. Because Petitioner has no statutory

right to release or a bond hearing, *see Jennings*, 138 S. Ct. at 842, she has no due-process right to the relief requested.[9] The Court therefore adopts the magistrate judge's recommendation that the Petition be denied.[10]

## CONCLUSION

**IT IS THEREFORE ORDERED** that Petitioner's Objections to Magistrate Judge's Proposed Findings & Recommended Disposition (Doc. 28) are **OVERRULED** and the PFRD (Doc. 27) is **ADOPTED**.

**IT IS FURTHER ORDERED** that Petitioner's Petition for a Writ of Habeas Corpus (Doc. 1) is **DENIED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] The Court denies Petitioner's request for release for an additional reason: Petitioner failed to identify the authority that permits the Court to order her release and fails to argue why she should be released. In her Petition, she merely stated in a conclusory fashion, "Given the constitutional limits of prolonged detention, due process requires that Ms. Gonzalez Aguilar, who has been detained for almost 20 months, be released from detention." (Doc. 1 at 13.) The magistrate judge recommended finding that "[t]hough Petitioner appears to vaguely request that the Court 'order immediate release[,] the Petitioner has failed to identify which claim would entitle [her] to such relief, nor is such a claim apparent to the Court.'" (Doc. 27 at 22 (quoting *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *6 n.6 (S.D.N.Y. July 25, 2018)).) Petitioner neither objects to this recommendation nor identifies the authority that permits the Court to release her immediately. The Court therefore would decline to order this relief even if Petitioner persuaded it that the magistrate judge erred in his analysis of *Mezei* and other relevant precedent.

[10] In her Objections, Petitioner seems to resurrect her argument that *Jennings* suggests that the Supreme Court would reject application of *Mezei* to arriving aliens like herself. *See* (Doc. 28 at 4.) Yet, as the magistrate judge noted, *Jennings* expressly declined to decide the constitutionality of the prolonged detention of arriving aliens. *Jennings*, 138 S. Ct. at 851.

16